AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Fifteen cellular telephones, One Chartplotter/Sonar,<br>Three Satellite Phones, and Four GPS devices, seized<br>on December 6, 2020 | ) )<br>) )<br>) )<br>) )<br>) )<br>) ) |

Case No. **21-MJ-1691**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 46USC secs. 70503, 70506(b) | Conspiracy to Distribute Cocaine on Board a Vessel; Possession of Cocaine with Intent to Distribute on Board a Vessel |

The application is based on these facts:

See Attached Affidavit of Homeland Security Investigations Special Agent Emidio Pepe, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Emidio Pepe*
_____
*Applicant's signature*

Special Agent Emidio Pepe, HSI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: _____04/29/2021_____

*Barbara L Major*
_____
*Judge's signature*

City and state:  San Diego, California

Hon. Barbara L. Major U.S. Magistrate Judge
_____
*Printed name and title*

# ATTACHMENT A

The property to be searched in connection with an investigation of violations of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b) is described below:

One (1) ATT Model Z223 cell phone, black in color, IMEI – 868899026342; S/N – 3258643103A0 ("**Target Device 1**") as described in Attachment A and incorporated herein,

One (1) Ghia cell phone, black in color, S/N – STN2F ("**Target Device 2**") as described in Attachment A and incorporated herein,

One (1) HTC cell phone, white in color ("**Target Device 3**") as described in Attachment A and incorporated herein,

One (1) Huawei Model D cell phone, black in color ("**Target Device 4**") as described in Attachment A and incorporated herein,

One (1) Alcatel Pixi cell phone, silver in color, FCC ID – 2ACCJH057; S/N – 014674009471687 ("**Target Device 5**") as described in Attachment A and incorporated herein,

One (1) Samsung cell phone, black in color, IMEI – 3559767087351070; S/N – R28JC2EC6AE ("**Target Device 6**") as described in Attachment A and incorporated herein,

One (1) Motorola MC351 cell phone, purple in color, IMEI – 351615110579588 ("**Target Device 7**") as described in Attachment A and incorporated herein,

One (1) Samsung SM-A013M cell phone, black in color, IMEI – 350831/21/374847/2 ("**Target Device 8**") as described in Attachment A and incorporated herein,

One (1) Realme cell phone, red in color, SIM – 895930100085636012 ("**Target Device 9**") as described in Attachment A and incorporated herein,

15

One (1) Samsung SM-A107M cell phone, black in color, IMEI – 358099/10/790006/0; IMEI – 358100/10/790006/6; S/N – R9DMC04Q4DJ ("**Target Device 10**") as described in Attachment A and incorporated herein,

One (1) Huawei STK-LX3 cell phone, blue in color, SIM – 895930100087272867 ("**Target Device 11**") as described in Attachment A and incorporated herein,

One (1) Alcatel One Touch cell phone, black in color, FCC ID – 2ACCJH017; 4009A-2AEEPEI; SIM Claro 4G LTE – 95930100087178025 ("**Target Device 12**") as described in Attachment A and incorporated herein,

One (1) Alcatel 1066D cell phone, black in color, FCC ID – 2ACCJB098; IMEI – 354729102427644; IMEI – 354729102427651 ("**Target Device 13**") as described in Attachment A and incorporated herein,

One (1) Samsung SM-G532M/DS cell phone, black in color, FCC ID – A3LSMG532M; SN: G532M/DSGSMH; IMEI – 353106/08/473714/5; IMEI – 353107/08/473714/3 ("**Target Device 14**") as described in Attachment A and incorporated herein,

One (1) BLU C5 2019 cell phone, red in color, IMEI – 359704105112902; IMEI – 359704105112910; S/N – 7080018020033946 ("**Target Device 15**") as described in Attachment A and incorporated herein,

One (1) Garmin echoMAP CHIRP 54DV chartplotter/sonar device, S/N – 4LJ009210 ("**Target Device 16**") as described in Attachment A and incorporated herein,

One (1) Iridium satellite phone, black in color, IMEI – 300115060360080; S/N – 8988169326002627234 ("**Target Device 17**") as described in Attachment A and incorporated herein,

One (1) Iridium satellite phone, black in color, IMEI – 300115060367220; S/N – 8988169326002627010, ("**Target Device 18**") as described in Attachment A and incorporated herein,

16

One (1) Iridium satellite phone, black in color, IMEI – 300115060361240; S/N – 8988169326002626897 ("**Target Device 19**") as described in Attachment A and incorporated herein,

One (1) Garmin GPS72H, black in color, S/N – 1T7372186 ("**Target Device 20**") as described in Attachment A and incorporated herein,

One (1) Garmin GPS72H, black in color, S/N – 1T7309758 ("**Target Device 21**") as described in Attachment A and incorporated herein,

One (1) Garmin GPS73, black and gray in color, S/N – 4HF060200 ("**Target Device 22**") as described in Attachment A and incorporated herein,

One (1) Garmin GPS73, black and gray in color, S/N – 4HF060202 ("**Target Device 23**") as described in Attachment A and incorporated herein,

(collectively referred to as "**Target Devices**")

**Target Devices** are currently in the possession of United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations.

17

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the **Target Devices** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices**. The seizure and search of the **Target Devices** will be conducted in accordance with the procedures outlined in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of September 1, 2020, up to and including December 6, 2020:

a.  tending to identify attempts to transport cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services- such as email addresses, IP addresses, and phone numbers-used to facilitate the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

d.  tending to identify travel to or presence at locations involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States, such as pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture;

e.  tending to identify the user of, or persons with control over or access to, the target device; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 46 U.S.C. §§ 70503(a)(l), 70506(b).**

18

## **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Special Agent Emidio Pepe, being duly sworn, depose and state as follows:

## **INTRODUCTION**

1.    This affidavit supports an application to search the following target devices:

One (1) ATT Model Z223 cell phone, black in color, IMEI – 868899026342; S/N – 3258643103A0 ("**Target Device 1**") as described in Attachment A and incorporated herein,

One (1) Ghia cell phone, black in color, S/N – STN2F ("**Target Device 2**") as described in Attachment A and incorporated herein,

One (1) HTC cell phone, white in color ("**Target Device 3**") as described in Attachment A and incorporated herein,

One (1) Huawei Model D cell phone, black in color ("**Target Device 4**") as described in Attachment A and incorporated herein,

One (1) Alcatel Pixi cell phone, silver in color, FCC ID – 2ACCJH057; S/N – 014674009471687 ("**Target Device 5**") as described in Attachment A and incorporated herein,

One (1) Samsung cell phone, black in color, IMEI – 3559767087351070; S/N – R28JC2EC6AE ("**Target Device 6**") as described in Attachment A and incorporated herein,

One (1) Motorola MC351 cell phone, purple in color, IMEI – 351615110579588 ("**Target Device 7**") as described in Attachment A and incorporated herein,

One (1) Samsung SM-A013M cell phone, black in color, IMEI – 350831/21/374847/2 ("**Target Device 8**") as described in Attachment A and incorporated herein,

One (1) Realme cell phone, red in color, SIM – 895930100085636012 ("**Target Device 9**") as described in Attachment A and incorporated herein,

One (1) Samsung SM-A107M cell phone, black in color, IMEI – 358099/10/790006/0; IMEI – 358100/10/790006/6; S/N – R9DMC04Q4DJ ("**Target Device 10**") as described in Attachment A and incorporated herein,

1

One (1) Huawei STK-LX3 cell phone, blue in color, SIM – 895930100087272867 ("**Target Device 11**") as described in Attachment A and incorporated herein,

One (1) Alcatel One Touch cell phone, black in color, FCC ID – 2ACCJH017; 4009A-2AEEPEI; SIM Claro 4G LTE – 95930100087178025 ("**Target Device 12**") as described in Attachment A and incorporated herein,

One (1) Alcatel 1066D cell phone, black in color, FCC ID – 2ACCJB098; IMEI – 354729102427644; IMEI – 354729102427651 ("**Target Device 13**") as described in Attachment A and incorporated herein,

One (1) Samsung SM-G532M/DS cell phone, black in color, FCC ID – A3LSMG532M; SN: G532M/DSGSMH; IMEI – 353106/08/473714/5; IMEI – 353107/08/473714/3 ("**Target Device 14**") as described in Attachment A and incorporated herein,

One (1) BLU C5 2019 cell phone, red in color, IMEI – 359704105112902; IMEI – 359704105112910; S/N – 7080018020033946 ("**Target Device 15**") as described in Attachment A and incorporated herein,

One (1) Garmin echoMAP CHIRP 54DV chartplotter/sonar device, S/N – 4LJ009210 ("**Target Device 16**") as described in Attachment A and incorporated herein,

One (1) Iridium satellite phone, black in color, IMEI – 300115060360080; S/N – 8988169326002627234 ("**Target Device 17**") as described in Attachment A and incorporated herein,

One (1) Iridium satellite phone, black in color, IMEI – 300115060367220; S/N – 8988169326002627010, ("**Target Device 18**") as described in Attachment A and incorporated herein,

One (1) Iridium satellite phone, black in color, IMEI – 300115060361240; S/N – 8988169326002626897 ("**Target Device 19**") as described in Attachment A and incorporated herein,

One (1) Garmin GPS72H, black in color, S/N – 1T7372186 ("**Target Device 20**") as described in Attachment A and incorporated herein,

One (1) Garmin GPS72H, black in color, S/N – 1T7309758 ("**Target Device 21**") as described in Attachment A and incorporated herein,

One (1) Garmin GPS73, black and gray in color, S/N – 4HF060200 ("**Target Device 22**") as described in Attachment A and incorporated herein,

One (1) Garmin GPS73, black and gray in color, S/N – 4HF060202 ("**Target Device 23**") as described in Attachment A and incorporated herein,

(collectively referred to as "**Target Devices**") and to seize evidence of crimes as outlined in Attachment B, and incorporated herein, specifically Title 46 U.S.C. §§ 70503(a)(1), 70506(b)[1], Conspiracy to Distribute Cocaine on Board a Vessel, Possession with Intent to Distribute Cocaine On Board a Vessel.

2.      Enrique Rafael AMARALMeza, William Salvador SANCHEZ Garcia, Jesus Ernesto NAVARRO Morales, Javier MONTES Cabrera, Hector Leonel VALENCIA Segovia, Alexander Javier TOMALA Pozo, Antonio Roberto CEDENO Valencia, Galo Rosario BAILON Alvia, Rafael Aurelio CHERE Gazpar, and Ulbio Galo CHELE Plua were interdicted by the United States Coast Guard on December 6, 2020. A Coast Guard helicopter detected a go-fast vessel (GFV) completely covered by a blue tarp and dead-in-the-water approximately 432 nautical miles from Mexico, in the Eastern Pacific Ocean.   U.S. Coast Guard Cutter Active (ACTIVE) diverted to intercept and launched two Coast Guard (CG) small boats with embarked law enforcement teams to investigate the GFV.

---

[1]  Title 46 U.S.C. §§ 70503(a)(1) and 70506(b) prohibits the manufacture, distribution, and possession of controlled substances, and conspiracy to commit the same, on vessels subject to jurisdiction of the United States. A vessel is "subject to the jurisdiction of the United States" if the vessel is without nationality. A vessel without nationality includes any vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

3

3.      One of the CG small boats pulled alongside the GFV and instructed any persons on board to remove the tarp and present themselves.  Personnel on board the GFV complied and retracted the tarp, revealing a total of ten people, the ten defendants, on the vessel.  During the boarding the CG recovered approximately 1,836 kilograms (4,039.2 pounds) of cocaine from the GFV.  The **Target Devices** were seized from the GFV and/or defendants.   The **Target Devices** are in the custody of the Homeland Security Investigations in San Diego, California.

4.      On January 15, 2021, the Honorable Allison H. Goddard, Magistrate Judge, Southern District of California signed a warrant authorizing the search of the **Target Devices**. Investigators were unable to complete the analysis of the devices and identify and extract the data within ninety days. The ninety day period has now lapsed, therefore I am resubmitting the warrant to search the **Target Devices**.

5.      Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B.

## <u>TRAINING AND EXPERIENCE</u>

6.      I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI) and have been so employed for approximately one year.   Prior to my employment with HSI, I was a United States Border Patrol Agent for approximately 13 years, serving in a combination of uniformed patrol and plainclothes investigative assignments.  I have conducted criminal investigations of or relating to narcotics smuggling and other crimes. I have received specific training in the area of narcotics investigations, and I have training and experience in the methods used by narcotics traffickers to import and distribute drugs. I am presently assigned to the Organized Drug Enforcement Task Force (OCDETF) Strikeforce Group in San Diego, California, and my duties include investigating the illicit trafficking of controlled substances into the United States of America. I am cross

4

designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21, United States Code.

7.     I have received formal training, as well on-the-job experience and training, relative to the investigation of the importation, transportation, sales, manufacturing and distribution of controlled substances.  I have also participated in investigations that involved the use of electronic surveillance techniques.  I have investigated illicit narcotic and controlled substances that have resulted in arrests, indictments, trials and convictions. While participating in these and other criminal investigations, I have executed search warrants on residences and vehicles.  I have participated in investigations in which drug traffickers also relied heavily upon electronic communication facilities and other electronic devices as a means of communicating.  I have interviewed individuals who have been directly and indirectly involved in the importation, transportation, distribution and manufacturing of illegal drugs and controlled substances.

8.     Based on my training and experience, I have become familiar with the methods utilized in narcotics trafficking operations and the unique trafficking patterns employed by narcotics organizations.  I have also spoken with senior agents as well as other senior law enforcement officers, about their experiences and the results of their investigations and interviews. I know that drug-traffickers often require the use of a communication facility to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances, and for arranging the disposition of proceeds from the sales of controlled substances.  I know that professional drug operations depend upon maintaining their extensive contacts. The communication facility enables drug dealers to maintain contact with drug associates, drug suppliers and drug customers.  I also know that drug-traffickers sometimes use fraudulent information, such as nominee names and false addresses, to subscribe to communication facilities, especially emails, cellular phones, messaging apps, and

5

frequently use communication facilities to thwart law enforcement efforts to intercept their communications.

9.      Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

    a.   Drug traffickers will use cellular/satellite telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

    b.   Drug traffickers will use cellular/satellite telephones and GPS/chartplotter/sonar devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    c.   Drug traffickers and their accomplices will use cellular/satellite telephones and GPS/chartplotter/sonar devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d.   Drug traffickers will use cellular/satellite telephones and GPS devices to direct boat captains/crew members to synchronize an exact drop off and/or pick up time of their illegal cargo;

    e.   Drug traffickers will use cellular/satellite telephones and GPS/chartplotter/sonar devices to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

    f.   The use of cellular/satellite telephones by drug traffickers tends to generate evidence that is stored on by the service provider, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, routes, location history, and other digital information.

    g.   The use of GPS/chartplotter/sonar devices by smugglers tends to generate evidence that is stored on the GPS, including, but not limited to address book entries, search history, user profiles and passwords, location history, route contacts, saved addresses-tending to indicate who used or controlled the GPS device, and other digital information.

10.     Based upon my training and experience as a Special Agent, and

6

consultations with law enforcement officers experienced in drug-trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/satellite telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third party applications, photographs , audio files, videos, and location data. I also know that GPS/chartplotter/sonar devices can and often do contain electronic records and data such as contacts location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the devices. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular telephones and GPS/chartplotter/sonar devices yields evidence:

      a.    tending to identify attempts to transport cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

      b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

      c.    tending to identify co-conspirators, criminal associates, or others involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

      d.    tending to identify travel to or presence at locations involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States, such as pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture;

e.      tending to identify the user of, or persons with control over or access to, the target device; and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11.     In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of drug-trafficking investigations, and the opinions stated here are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search **Target Devices** that are believed to contain evidence of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b).

12.     Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other Special Agents in Federal Law Enforcement, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## FACTS SUPPORTING PROBABLE CAUSE

13.     On or about December 6, 2020, a helicopter assigned to the United States Coast Guard (USCG) Cutter Active (ACTIVE) detected a Go-Fast Vessel (GFV) drifting in the water approximately 432 nautical miles (NM) from Mexico. The GFV was completely covered with a tarp.

14.     ACTIVE launched a smallboat with an embarked boarding team to interdict the GFV. The smallboat came alongside the GFV and gained control of the GFV. The GFV was grey and white in color and had three outboard engines, each approximately 200 horsepower, numerous fuel barrels, and visible packages on deck consistent with narcotics. The boarding team conducted right of visit questioning. The questioning yielded no vessel name, no homeport, no registration number, and no painted on markings on the hull. The GFV was also not flying a physical flag and did not have registration documents. The boarding team noted that there were ten people onboard the GFV – the defendants Enrique Rafael AMARAL Meza, William Salvador SANCHEZ Garcia, Jesus Ernesto NAVARRO Morales, Javier MONTES Cabrera, Hector Leonel VALENCIA Segovia, Alexander Javier TOMALA Pozo, Antonio Roberto CEDENO Valencia, Galo Rosario BAILON Alvia, Rafael Aurelio CHERE Gazpar, and Ulbio Galo CHELE Plua.

15.     Defendants Enrique Rafael AMARAL Meza, William Salvador SANCHEZ Garcia, Jesus Ernesto NAVARRO Morales, Javier MONTES Cabrera claimed Mexican nationality for themselves. While defendants Hector Leonel VALENCIA Segovia, Alexander Javier TOMALA Pozo, Antonio Roberto CEDENO Valencia, Galo Rosario BAILON Alvia, Rafael Aurelio CHERE Gazpar, and Ulbio Galo CHELE Plua claimed Ecuadorian nationality for themselves.

16.     Enrique Rafael AMARAL Meza was identified as the master of the vessel and he claimed Mexican nationality for the vessel. During the it was claimed the purpose of the voyage was to meet an Ecuadorian vessel to onload narcotics.

17.     The Coast Guard enacted the US/MX OPCEN to OPCEN SOP (NAMSI) and conducted a forms exchange with Mexico. Mexico could neither confirm nor deny the nationality of the vessel. Therefore, the Coast Guard issued a Statement of No Objection and treated the vessel as without nationality ("TWON") and conducted a full law enforcement boarding.

18.     During the boarding of the GFV the boarding team recovered approximately 92 packages consistent with narcotics, at an approximate weight of 1,836 kilograms (4,039.2 pounds). These packages field tested positive for cocaine. **Target Devices 1-23** were all seized from the GFV and/or defendants on board.

19.     Defendant AMARAL Meza claimed **Target Devices 1, 2, 3, 4, 5, and 6**. Defendant SANCHEZ Garcia claimed **Target Device 7**.  NAVARRO Morales claimed **Target Device 8**.  Defendant VALENCIA Segovia claimed **Target Device 9**.  Defendant TOMALA Pozo claimed **Target Device 10**.  Defendant CEDENO Valencia claimed **Target Device 11**.  Defendant BAILON Alvia claimed **Target Device 12**.  Defendant CHERE Gazpar claimed **Target Devices 13 and 14**. Defendant CHELE Plua claimed **Target Device 15**. None of the Defendants claimed the other **Target Devices.**

20.     Therefore, based upon my experience investigating drug-traffickers using go-fast vessels and the particular investigation in this case, I believe that pertinent information, specifically launch-point locations, refueling way-points and the overall smuggling route, remain stored on the **Target Devices,** and that Enrique Rafael AMARAL Meza, Willian Salvador SANCHEZ Garcia, Jesus Ernesto NAVARRO Morales, Javier MONTES Cabrera, Hector Leonel VALENCIA Segovia, Alexander Javier TOMALA Pozo, Antonio Roberto CEDENO Valencia, Galo Rosario BAILON Alvia, Rafael Aurelio CHERE Gazpar, and Ulbio Galo CHELE Plua likely used the **Target Devices** to coordinate the conspiracy to possess with intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States and conspiracy to distribute controlled substances for the purpose of importation into the United States. Based on my investigation of drug importation and distribution conspiracies, coordination between smugglers can begin several weeks or months before drugs are loaded into the low profile vessel, and includes coordination on the pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture. I respectfully request permission to search **Target Devices** for data beginning on

10

September 1, 2020, up to and including December 6, 2020.

21.     I also know that search history, user profiles and passwords, location history, routes, contacts, saved addresses–tending to indicate who used or controlled the cellular telephone or GPS device, and other digital information are stored in the memory of **Target Devices** which may identify other persons involved in drug-trafficking activities. Additional contact information for others possibly involved in the conspiracy to distribute controlled substances can be adduced from **Target Devices**.

22.     Based upon my experience and training, consultation with other law enforcement officers experienced in drug-trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of Enrique Rafael AMARAL Meza, Willian Salvador SANCHEZ Garcia, Jesus Ernesto NAVARRO Morales, Javier MONTES Cabrera, Hector Leonel VALENCIA Segovia, Alexander Javier TOMALA Pozo, Antonio Roberto CEDENO Valencia, Galo Rosario BAILON Alvia, Rafael Aurelio CHERE Gazpar, and Ulbio Galo CHELE Plua, such as search history, user profiles and passwords, location history, routes, contacts, saved addresses–tending to indicate who used or controlled the cellular telephone and GPS device, and other digital information are stored in the memory of **Target Devices**.

## **METHODOLOGY**

23.     It is not possible to determine, merely by knowing the cellular telephone, or GPS/chartplotter/sonar device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular service providers now allow for their subscribers to access their device over the

11

internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24.     Following the issuance of this warrant, I will collect the cellular telephones, satellite phones, and GPS/chartplotter/sonar devices and subject them to analysis. All forensic analysis of the data contained within the cellular telephones, satellite phones, and GPS devices and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

26.     Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Enrique Rafael AMARAL Meza, Willian Salvador

SANCHEZ Garcia, Jesus Ernesto NAVARRO Morales, Javier MONTES Cabrera, Hector Leonel VALENCIA Segovia, Alexander Javier TOMALA Pozo, Antonio Roberto CEDENO Valencia, Galo Rosario BAILON Alvia, Rafael Aurelio CHERE Gazpar, and Ulbio Galo CHELE Plua used **Target Devices** to facilitate the offense of conspiracy to distribute cocaine. The **Target Devices** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b).

27.     Because the **Target Devices** were seized, there is probable cause to believe that evidence of illegal activity related to conspiracy to possess with intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States committed by Enrique Rafael AMARAL Meza, Willian Salvador SANCHEZ Garcia, Jesus Ernesto NAVARRO Morales, Javier MONTES Cabrera, Hector Leonel VALENCIA Segovia, Alexander Javier TOMALA Pozo, Antonio Roberto CEDENO Valencia, Galo Rosario BAILON Alvia, Rafael Aurelio CHERE Gazpar, and Ulbio Galo CHELE Plua continues to exist on the **Target Devices**.

28.     WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and to seize items listed in Attachments B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.


_Emidio Pepe_
Emidio Pepe
Special Agent
Homeland Security Investigations

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this ___29th___ day of April, 2021.

_Barbara L Major_

HON. Barbara L. Major
United States Magistrate Judge

14

## ATTACHMENT A

The property to be searched in connection with an investigation of violations of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b) is described below:

One (1) ATT Model Z223 cell phone, black in color, IMEI – 868899026342; S/N – 3258643103A0 ("**Target Device 1**") as described in Attachment A and incorporated herein,

One (1) Ghia cell phone, black in color, S/N – STN2F ("**Target Device 2**") as described in Attachment A and incorporated herein,

One (1) HTC cell phone, white in color ("**Target Device 3**") as described in Attachment A and incorporated herein,

One (1) Huawei Model D cell phone, black in color ("**Target Device 4**") as described in Attachment A and incorporated herein,

One (1) Alcatel Pixi cell phone, silver in color, FCC ID – 2ACCJH057; S/N – 014674009471687 ("**Target Device 5**") as described in Attachment A and incorporated herein,

One (1) Samsung cell phone, black in color, IMEI – 3559767087351070; S/N – R28JC2EC6AE ("**Target Device 6**") as described in Attachment A and incorporated herein,

One (1) Motorola MC351 cell phone, purple in color, IMEI – 351615110579588 ("**Target Device 7**") as described in Attachment A and incorporated herein,

One (1) Samsung SM-A013M cell phone, black in color, IMEI – 350831/21/374847/2 ("**Target Device 8**") as described in Attachment A and incorporated herein,

One (1) Realme cell phone, red in color, SIM – 895930100085636012 ("**Target Device 9**") as described in Attachment A and incorporated herein,

15

One (1) Samsung SM-A107M cell phone, black in color, IMEI – 358099/10/790006/0; IMEI – 358100/10/790006/6; S/N – R9DMC04Q4DJ (“**Target Device 10**”) as described in Attachment A and incorporated herein,

One (1) Huawei STK-LX3 cell phone, blue in color, SIM – 895930100087272867 (“**Target Device 11**”) as described in Attachment A and incorporated herein,

One (1) Alcatel One Touch cell phone, black in color, FCC ID – 2ACCJH017; 4009A-2AEEPEI; SIM Claro 4G LTE – 95930100087178025 (“**Target Device 12**”) as described in Attachment A and incorporated herein,

One (1) Alcatel 1066D cell phone, black in color, FCC ID – 2ACCJB098; IMEI – 354729102427644; IMEI – 354729102427651 (“**Target Device 13**”) as described in Attachment A and incorporated herein,

One (1) Samsung SM-G532M/DS cell phone, black in color, FCC ID – A3LSMG532M; SN: G532M/DSGSMH; IMEI – 353106/08/473714/5; IMEI – 353107/08/473714/3 (“**Target Device 14**”) as described in Attachment A and incorporated herein,

One (1) BLU C5 2019 cell phone, red in color, IMEI – 359704105112902; IMEI – 359704105112910; S/N – 7080018020033946 (“**Target Device 15**”) as described in Attachment A and incorporated herein,

One (1) Garmin echoMAP CHIRP 54DV chartplotter/sonar device, S/N – 4LJ009210 (“**Target Device 16**”) as described in Attachment A and incorporated herein,

One (1) Iridium satellite phone, black in color, IMEI – 300115060360080; S/N – 8988169326002627234 (“**Target Device 17**”) as described in Attachment A and incorporated herein,

One (1) Iridium satellite phone, black in color, IMEI – 300115060367220; S/N – 8988169326002627010, (“**Target Device 18**”) as described in Attachment A and incorporated herein,

16

One (1) Iridium satellite phone, black in color, IMEI – 300115060361240; S/N – 8988169326002626897 ("**Target Device 19**") as described in Attachment A and incorporated herein,

One (1) Garmin GPS72H, black in color, S/N – 1T7372186 ("**Target Device 20**") as described in Attachment A and incorporated herein,

One (1) Garmin GPS72H, black in color, S/N – 1T7309758 ("**Target Device 21**") as described in Attachment A and incorporated herein,

One (1) Garmin GPS73, black and gray in color, S/N – 4HF060200 ("**Target Device 22**") as described in Attachment A and incorporated herein,

One (1) Garmin GPS73, black and gray in color, S/N – 4HF060202 ("**Target Device 23**") as described in Attachment A and incorporated herein,

(collectively referred to as "**Target Devices**")

**Target Devices** are currently in the possession of United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations.

17

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the **Target Devices** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices**. The seizure and search of the **Target Devices** will be conducted in accordance with the procedures outlined in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of September 1, 2020, up to and including December 6, 2020:

a. tending to identify attempts to transport cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services- such as email addresses, IP addresses, and phone numbers-used to facilitate the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

d. tending to identify travel to or presence at locations involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States, such as pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture;

e. tending to identify the user of, or persons with control over or access to, the target device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 46 U.S.C. §§ 70503(a)(l), 70506(b).**

18